This is case number 413-0206, People of the State of Illinois v. Christina Knox. We have for the appellant, Mr. Williams, and for the appellee, Mr. Manchin. You may proceed, counsel. Thank you, Your Honor. May it please the Court, Mr. Manchin. My name is James Ryan Williams, and I'm captain of the Office of the State Appellant Defender. It is my privilege to represent Ms. Christina Knox before this honorable court. The United States Supreme Court has explained that the choice of consent to a search must be a voluntary decision, and that that decision is only voluntary when it is the product of free and unconstrained will. That not only means that the decision must be free of coercion, however slight, but also that the decision-making process cannot be subverted. Because where the decision-making process is subverted, it simply cannot be said that the resulting decision is a product of free and unconstrained will. In evaluating the voluntariness of consent, the Supreme Court has said that the totality of the circumstances should be analyzed. Factors to consider include, but are not limited to, the use of the individual, the lack of advice regarding constitutional rights, and the knowledge of the right to refuse consent. And here what we have is a young woman, Ms. Christina Knox, who receives no advice regarding her constitutional rights. Quite the opposite, Officer Hinkle, the officer here, approaches her and Jeremy, her domestic partner, the father of three children, as they're sitting together on the front porch. And he advises that Jeremy is on probation, and as a condition of probation, has to consent to searches. Probation, however, did not request this search, and in fact, Officer Hinkle did not even know the terms of Jeremy's probation order. All he knew was that he could invoke and exploit the fear of a probation violation to get consent, where he otherwise might not be able to. There's simply no other reason to premise a general search request on the fact that one of the people living in the home is on probation. And after giving the false impression that he was present at the direction of probation to conduct a probation search, Officer Hinkle asked for Jeremy's consent, and asked for Christina's consent. And facing an apparent probation search, each unsurprisingly exceeded his request. So, Counsel, is it your position that Ms. Knox thought she had to consent to a search because Jeremy was on probation? Yes, Your Honor. She was a cohabitant of the home, and pursuant to the recent United States Supreme Court case, Georgia v. Randolph, she actually did have the right, she has the right to deny consent to search. And here, where the officer asked her for her consent, that obviously would have implied that she could withhold her consent, and no reasonable person in this situation would feel free to withhold consent in the face of an apparent probation search, thereby, at least seemingly, subjecting his or her domestic partner, or anybody who lives in the house for that matter, to a potential probation violation. Now, by giving the false impression that he was present at the direction of probation, Officer Hinkle erroneously suggested that he had the lawful authority to search the home. And the Supreme Court has said that consent is invalid when granted only in submission to such a claim of lawful authority. The Supreme Court has also said that where there is coercion, there cannot be consent. And to that end, the Supreme Court explained that in examining the totality of the circumstances, a count must be taken of the possible vulnerable subjective states of the consenter, as well as any subtle police coercion. For no matter how subtle the coercion was applied, the resulting consent would be no more than a pretext for unjustified police intrusion. And the coercion here, really, is far from subtle. The only reason for Officer Hinkle's statement, again, was to exploit the fear of a potential probation violation. He therefore manipulated the vulnerabilities of a young family of five by implicitly threatening to sever the family unit with a potential probation violation and perhaps the imprisonment of Jeremy if they refused consent. To coerce, as it was, Christina's consent here cannot be considered a voluntary decision. The consent was indeed nothing more than a pretext for unjustified police intrusion. Under the totality of the circumstances, it is clear that Officer Hinkle did not receive Christina's free and voluntary consent, but instead extracted her consent through deception and coercion. And consent obtained in this way is not valid. How was it coercive? It was coercive because, I mean, Christina undeniably had an interest in the successful completion of probation of her domestic partner Jeremy. It's coercive because no person in this situation, when they're facing what is ostensibly a legitimate probation search, he's represented, he's there at the direction of probation, no reasonable person feels free to decline an officer's request there. I mean, people who are living on probation, whether it's the probationer himself or their loved ones, they're essentially living on eggshells. I mean, they know that the slightest indiscretion could mean that probation is revoked. It could mean imprisonment. Now, granted here he was only on probation for driving without a license, and perhaps it's unlikely that he actually would have been imprisoned for this, but no person facing an apparent probation search feels free to say, no, officer, you can't come in. And for that reason alone, her consent was just not voluntary. And to that end, I actually, I alternatively submit to this court that the officer's deception here alone is really dispositive of the voluntariness inquiry. Again, the Supreme Court has explained that voluntariness must be determined based on the totality of the circumstance. And that, of course, is because no single fact could ever prove voluntariness. And voluntariness, on the other hand, can no doubt be proven by a single fact. If, for example, Officer Heaple had approached this young couple and directly threatened, you let me search your house, or Jeremy's going to prison. That would no doubt prove the resulting consent involuntary. So here, when the government is deceptive as to the purpose for which it is seeking consent, that invariably subverts the decision-making process of the consentor. And when someone's decision-making process is subverted in this way, it simply can't be said that the resulting decision is a product of free and unconstrained will, because the consentor does not even know what it is that he or she is actually consenting to. What did the officer do or say to suggest that Ms. Knox had to consent based on the probation? He approached this couple and he said, Jeremy, you're on probation. As a condition of probation, you have to consent to search your house. Admittedly, the statement was directed to Mr. Benway. Christina was not on probation herself. But again... What would have happened? What would she have feared would have happened if, when he turned to her and said, I want to search the residence where you consent to it, what are you suggesting she feared would have happened? Had she said, no, I don't want you to. Get to work. I mean, again, because this is ostensibly a probation search, the obvious fear here would be that Jeremy would be subjected to probation violation. And I say that because if this is not the case, if it is not the case that a cohabitant who exercises their rights and say, officers, you cannot come in, if that's not the case, then people can essentially defeat, with impunity, search conditions of probation by simply relying on the Fourth Amendment rights of their cohabitants. Can't they? Isn't that, in fact, true? I don't believe that. Well, under Georgia, if she has an absolute right to say no, and the police can't then search, what do you suppose the trial judge would have said had the state filed a petition to revoke the defendant's probation on the grounds that he failed to consent to a search? How about get out of town, prosecutor, because there's no evidence to support that claim? Again, I believe that if this is indeed the law, if it is indeed the case that a probationer can say, well, I'm consenting, but unfortunately my wife says you can't come in, so you can't. Not even wife, as you put it. As you put it, gracefully, domestic partner. They have three children together. Okay, well, he's more than a girlfriend, but they ain't married. Okay, so give me, change directions for a moment. You're the prosecutor. He says, I understand I'm on probation, you can search. Cop asks her to search, she says no. What charge are you going to bring against him? In this instance, your honor, it seems to me the only reasonable solution to this problem That's not answering my question. What charge are you going to bring against him? Failure to... Successful completion of probation in this circumstance seems necessarily dependent on the cooperation of the co-inhabitants. Because again, if... Counsel, what charge are you going to bring against him? Are you going to file a petition alleging he violated probation because he didn't consent to a search? If this is in you, the law, it seems like that would significantly inhibit the effective operation of the probation system. If probationers can, with impunity, say well, you can come in, but my wife, my girlfriend, my co-inhabitant... Or as we know, if she weren't there, they could come at a time when she's not there and tell them you have to consent to a search, assuming it's a legitimate probation search. But she's there. She has the right to refuse. She refuses. How... Even from the point of view of just a layman, what... If she refuses, how is this... Why would she think it's going to come back to be a detriment on her domestic partner? I just don't... I don't believe that any reasonable person in this situation would feel that they could, with impunity, refuse consent to an officer who is ostensibly attempting to conduct a legitimate probation search. I'm not denying... I mean, in theory, it seems absurd that... And by the way, under the sequence of events, isn't it kind of odd if she thinks she has no opportunity to object? Apparently, she saw or heard, is your theory, the discussion about... And what's his name? Yeah. About, you're on probation, you have to consent. The cop then turns to her and says, you live here, or worse than that, in fact, will you consent to a search of your residence? If it's true that because he was on probation, the cop can go ahead and search, why is he bothering to ask her in the first place? And what inference should she draw from that? The fact that he asked her, to me, seemingly suggested... Doesn't it suggest that she can say no? Exactly, it would suggest that she can say no. But again, it is my position that no reasonable person in this situation would feel free to say no to what is apparently... Well, why not? I'm still not sure what she should have reasonably feared if she said no, why she should think somehow it would come back to the detriment of her domestic partner if she said no. He said, he didn't say no, did he? Following the discussion, he consented as well. Okay, so, right in front of her, he says, okay. The cop turned to her and said, will you consent to search? And if she said no, why should she think there's going to be some bad consequence for him? What did he do wrong? Because if she says no, thereby preventing the officers from entering the residence, I just believe it would reasonably appear to a person that that could create a probation violation. It would be a huge detriment to the effective operation of the probation system if probationers can do this. Well, in fact, as a matter of law, they can't. That is, that there would be no consequence as a matter of law to a person who shares a dwelling with a probationer saying, I don't consent to your search, cop. Get off my property. Isn't that right? On that point, I'm just not sure, Your Honor. Well, counsel, doesn't Georgia v. Randolph make it clear that one person who's an occupant has a right to refuse to consent? They have. Of course, Georgia v. Randolph makes it absolutely clear that they have the right to refuse, but that does not... If the state brought a revocation charge against the guy based upon his domestic partner's refusal, what do you think the trial judge would say about that? Can you guess? I think that's absurd. I do. I don't think... That doesn't seem sound, but at the same time, it just makes no sense in the spectrum of the effective operation of a probation system that probationers can, with impunity, rely on the rights of their domestic partners. Well, a question I ask often in civil cases, I don't have occasion to ask much in criminal ones, but it seems applicable here. When a plaintiff is arguing that the defendant is liable, I say, well, before you're liable, shouldn't you have done something wrong if you're the defendant in a civil case? Similarly, before you could be deemed liable for consequences in a criminal action, shouldn't you have done something wrong? So here's the question. What did the guy do wrong that would justify revocation of his probation? I understand what you're saying, Your Honor. And to that end, again, all I can base my argument on here is to me it just makes absolutely no sense that probation terms can be defeated in this way. It just makes no sense. Why would it necessarily be defeated? If he asked the probationer or told the probationer, I'm coming in to search your residence because you're on probation and I can do that, and goes ahead and does it, the cohabitant can, you know, scream and yell and say, you don't have my permission. Well, if they are cohabiting together, it really doesn't matter, does it? She can still say no. My understanding, my reading of Georgia v. Randolph would suggest that if the cohabitant said no, that would mean that the officer could not search over the objection of the present cohabitant. That would mean that they could not come in at all. And, again, that gets back to my point. If the officer can never come in at all simply because a cohabitant exercises their right to preclude the officer from doing so, it seems to me that that would be a major impediment to the effective operation of the probation system. That the person would be legitimately defeating an express term of their probation order by relying on the rights of a cohabitant. Moving on, I also argue here that Christina was illegally seized. And it's worth saying that it's a similar argument because, again, I feel like no person here, no reasonable person in this situation would have felt free to disregard the police conduct and go about their business. And, again, no reasonable person here would feel free to decline the officer's search request. Officer Hegel's statement constitutes an official show of authority to which a reasonable, innocent person would feel compelled to submit. No reasonable person facing an apparent probation search would feel free to simply disregard the police presence and go about their business. Any reasonable person in this situation would have felt obliged to remain, not move around in ways that could potentially jeopardize the officer's safety. And no reasonable person in this situation would have felt free to decline the officer's search request. And so it's my position that, really, before all this happened, she was illegally seized. Because this officer's deception created a situation in which no reasonable person would have felt free to leave. No reasonable person would have felt free to decline the officer's request. But, of course, a seizure is only unreasonable under the Fourth Amendment if it's not justified by reasonable suspicion. And here, Officer Hegel completely lacked reasonable suspicion. His alleged tip was two weeks old. It was from an unknown source. Yet, he had absolutely no, he could not provide a single detail. This was an entirely uncorroborated and unreliable tip. Therefore, the officer did not have reasonable suspicion. And, thus, the seizure of Ms. Knox was illegal. And everything that follows that, the consent, the evidence, the arrest, should have all been suppressed. The fact is, there's no need for police conduct of this sort. What happened to Christina and her family should never happen to anyone. No person should ever be so tricked, deceived, and manipulated by their own government. And unless this Court has any further questions, I would just respectfully ask that you vacate Ms. Knox's conviction. I don't see any. Thank you, Counsel. Thank you all for your time. Any argument, Mr. Manchin? Yes, please, Court, Counsel. In this case, the trial court found that there had been no illegal seizure, and no illegal deceptive purposes on the part of the police when they opposed this couple. The trial court also found that the statements to which the defendant now objects, your boyfriend, you're on probation, and you have to consent, was never made to the defendant. There was no testimony. In fact, the only testimony was the simply testimony of the officer that I did not tell this defendant, Christina Knox, that you have to consent. I didn't make any reference calls to your boyfriend's status at probation when I asked her to consent. Was she within hearing distance of the discussion with Benway? She was probably in hearing distance. So she may have heard all of that? She may have heard it. But there was no testimony by her that she heard. There was no testimony by her that she felt coerced by this. No testimony that she felt that she had to consent because of this statement. In fact, the entire testimony found in the trial court was that this statement was never made to this particular defendant. Which statement? That this statement, you're on probation, and you have to consent. What was the argument at the trial level on why the motion to suppress should be granted? It was based on this idea that she was in custody from the moment the police officer walked up on the front lawn and said, Hey, can you consent? And that's simply not true because under Jardines, you can walk up to a house, walk and talk, but walk and knock. Knock and talk. Knock and talk. I can't talk. So there was no argument made that what we're hearing here about how she consent wasn't legit because she felt coerced? They talked about the deception and how this was deceptive practices on the part of the officers to conceal their purpose for coming, but there was no deception as to the purpose. The stated purpose to the boyfriend were here because of their own probation. The testimony was they decided to go to this house because they had reports that this guy was involved in drug deals. Well, let me be more clear, Mr. Manchin. As you heard, Mr. Williams presented a strong argument on the idea about how this consent, her will was overridden because she felt compelled under the circumstances of what was said to her domestic partner, et cetera. I want to be clear on this. Was that the argument made at the trial level by this defendant to the court in support of the motion to suppress? I don't recall the exact argument made below, I'm afraid. This was part of the argument. I know you've been around a long time, and I would have thought the concept of forfeiture was your middle name, Mr. Manchin. Like I said, the primary argument below was that she was subjected to unlawful detention by the officer's actions in approaching her boyfriend and saying, you're on probation. So the officer had no legitimate basis to approach her and say what he said because this was tantamount to a seizure? Yes, that was the primary argument below. And therefore, anything that followed afterwards on this unlawful seizure was bogus and bad and whatever? Correct. That her consent was coerced by this statement and that the police engaged in unlawful deception when they said you're on probation. Well, that would be somewhat consistent with the argument we've heard here. I'm not arguing a waiver. Forfeiture, not a waiver. Forfeiture. I'm saying that if the statement is that she cannot complain that everything is bad because her boyfriend was deceived, because she would be then arguing his rights were violated by the police conduct, she has to argue that her personal rights were violated. And if the statement is never made to the defendant, as the trial court found, based on the testimony at trial, that the statement was never made to the defendant, her rights could not have been violated. Arguing deception with your boyfriend simply cannot be a basis for suppression. You have to argue your own personal rights. So whatever is wrong with what the police said to the boyfriend doesn't matter when the defendant doesn't hear it or there's no testimony that she heard or that she was affected by it. And since her boyfriend, as Justice Steinman points out, once the boyfriend has consented to the search, whether or not his consent was valid or not, there could be no charge of violation of probation because he is consented. And the Georgia case does not say that when you are in a place where there's two inhabitants and one says yes and the other says no, that you have to stop the search. What the court said there was that if one of the inhabitants objects, what you find cannot be used against that person. It doesn't say that if one person consents and the other objects, you have to stop the search. So that once the boyfriend consented, the police could go in and conduct the search. So that this theory that she was coerced to consent because she was afraid her boyfriend was facing a probation violation or recreditation simply doesn't follow. Because there's simply, once he has consented, he has fully complied with his probation terms. And a fear that is never expressed or stated by the defendant below at the trial level, that her boyfriend is going up the river if she doesn't consent, there's just no evidence there. This is a case where the police officer, one officer, no show of authority, no force, no weapons, conversational tone of voice, defendant in a public place, that's not a cedar. Talking to them is not a cedar. Making a statement, even if it's made to the defendant, doesn't create a cedar. Because just talking to the defendant is not a cedar. And that's what this whole case, as far as the cedar point is, is that we had a conversation, and because of the conversation, there was cedar. There's simply no cedar there. And as far as the purpose of that deception, there was no purpose of deception. The case is discussing purpose of deception. Say, if you flat out lie to the purpose defendant about why you were there, but you're there for some other reason, we are going to take that into consideration and find that the consent was invalid. Well, why were the police there? They were investigating a possible probation violation. What did they tell them? We're here about your probation. No deception as to the purpose. Would it matter for our purposes if there were? No, because deception in itself does not per se invalidate consent. The case law is clear that deception is personal. And I don't think there was any deception. The police officers may not have laid out fully everything that is stated in the boyfriend's probation order, but that isn't deception. Not telling everything you know or not everything that is going on is not deception. There is simply no custody, no seizure of the defendant when the police officer walks up there, no deception when they tell the boyfriend that you are on probation and can't leave consent to search, because the testimony below does not ever establish that that statement was made to the defendant. The defendant does not testify that she heard that statement. She does not testify that I thought I had to consent because my boyfriend was on probation in the Gulf River if I didn't consent. So the trial court's ruling below, finding that that statement was never made to the defendant, and could not have coerced her consent, and to support the bottom record, there is simply no basis to substitute your judgment in the trial court's findings or facts that this statement that creates the seizure and creates the coercion simply does not apply to this particular defendant. As far as the lack of admonitions, as it's stated in the Best of Months, when you're giving consent to search, you're not required to give admonitions, and so that should not be any factor of leading to the conclusion that this defendant's consent was endowed or coerced or voluntary. Are there no further questions? I see none. Thank you, Counsel. Any rebuttal? Yes, Your Honor. Thank you. A couple of points real quick. First of all, as to the motion to suppress, I will admit the defense counsel here really missed the argument in the initial motion to suppress. Then he filed a motion to reconsider the judge's decision, wherein he cited a number of cases that talk about how deception vitiates consent, and that was essentially the argument that he made there. Is raising those issues for the first time in a petition to reconsider adequate to avoid forfeiture? I honestly don't know, Your Honor. As I often have occasion to say, Counsel, here's the problem. You're looking at a panel of appellate judges who have decades of service in the trial court, and that's where our sympathy lies. The rule generally is we're never going to reverse a trial judge based on an argument the trial judge never heard, which is why this is an important question. Did the trial judge hear the argument? Hear no reason. A couple of things. First of all, the motion to reconsider the judge's denial of suppression. I believe the argument was before. I don't mean to mislead the lawyer by throwing off my recollection, but I think that because this is a constitutional violation, a Fourth Amendment violation, I believe that I'm with it, that I can rightfully raise it for the first time. Forfeiture still applies even to alleged constitutional violations. The state also argues here that there is no deception as to the purpose. First of all, the state essentially conceded that this was deceptive when it argued that this deception is simply not the type of deception that would mislead the Senate. The judge did find that this statement was misleading. The judge found that the officer did suggest that this was a probation search, but it was not. As to the cases that the state cites that indicate that deception is permissible, I believe all those cases are Fifth Amendment cases. We are in the Fourth Amendment arena here. We're talking about two totally different things. Under the Fifth Amendment, you have to have affirmative warnings. And because you have to have affirmative warnings, that mitigates the coercive effect. It's also unlikely that simply being deceptive, if I tell you your fingerprints are at the scene of a murder, that's not going to, although it does sometimes, but in theory it's not going to induce somebody to admit to a crime they didn't commit. Fourth Amendment, totally different. You're not required to give the person affirmative warnings as to their Fourth Amendment rights. Because of that, the coercive effect of deception, particularly acute, and the deception in the Fourth Amendment arena without the warnings, is perhaps quite likely to actually cause somebody to give a consent that is not actually representative of their own free will. And to that end, the consent here, consent to search must be truly voluntary. Truly voluntary consent simply cannot follow an officer's statement that is calculated to deceive somebody as to their constitutional rights. It just doesn't make sense. And once this court has any further questions, again, I would just request that you maintain this consultation. Thank you all very much. Thank you, counsel. We'll take the matter under advisement. We'll be in recess until the next case.